IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

JOYCE M. WHITTINGTON,

      Plaintiff,

V.                              CIVIL ACTION NO. 3:08-0915

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## FINDINGS AND RECOMMENDATION

In this action, filed under the provisions of 42 U.S.C. § 405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.  The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her application on April 25, 2006, alleging disability commencing July 15, 2000,[1] as a consequence of carpel tunnel, diabetes, heart trouble and colon problems. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review.  Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

---

[1] Plaintiff's insured status expired December 31, 2002, and it was incumbent upon her to establish disability on or before that date. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1974).

At the time her insured status expired, plaintiff was sixty years of age and had obtained a high school education. Her past relevant employment experience consisted of work as a receptionist. In his decision, the administrative law judge determined that plaintiff suffers from diabetes mellitus, status post adenocarcinoma of the colon, obesity and trigger finger of the left, non-dominant hand, impairments which are severe. Concluding that plaintiff had the residual functional capacity for a limited range of light level work and that plaintiff's past work was not precluded by these limitations, the administrative law judge found her not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. The medical evidence prior to December 31, 2002 reflects surgical treatment for colon cancer on June 27, 2001. Follow up reports do not indicate any evidence of recurrence or other problems related to this condition. Plaintiff also had surgery for carpal tunnel syndrome in 2001[2] and received treatment for non-insulin dependent diabetes, pain in the knees and back, chest pain, hypertension, high cholesterol and depression. As noted, the administrative law judge characterized her diabetes, status post adenocarcinoma of the colon, obesity and trigger finger of the left hand as being "severe." Consistent with an assessment from a state agency medical advisor, the administrative law judge found plaintiff had the residual functional capacity for light level work requiring no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling and no concentrated exposure to temperature extremes, fumes, odors, dust, gases, poor ventilation

---

[2]An August 28, 2001 follow-up report from Dr. Frank Trupo, who performed the surgery, reflects that plaintiff's carpal tunnel syndrome symptoms "have cleared" and that after administering injections into the right and left third fingers, where plaintiff had symptoms of trigger finger, she was experiencing only "intermittent" triggering of the left third finger on a "very occasional basis." He released her from his care and told her to return on an as-needed basis. As the administrative law judge observed, plaintiff submitted no evidence confirming she had returned to see him, despite her hearing testimony that she had.

2

and hazards such as heights and machinery. A vocational expert testified that plaintiff's past work as a receptionist would not be precluded by these limitations, and the administrative law judge thus found she could return to her past work.

Plaintiff raises two primary objections to the administrative law judge's decision. First, she asserts that the administrative law judge's credibility assessment does not comport with the regulations at 20 C.F.R. § 404.1529 or with SSR 96-7p. This argument is meritless as the decision reflects that the administrative law judge did use the two-step process for evaluating credibility.[3] First, he reviewed the evidence and determined that there were medical impairments present which resulted from anatomical, physiological or psychological abnormalities and that these impairments could reasonably be expected to produce the pain and other symptoms plaintiff alleged.[4] Next, he considered the intensity and persistence of these symptoms and the extent to which they affected plaintiff's ability to work prior to December 31, 2002.[5] The administrative law judge gave specific reasons for his findings and did not, as plaintiff alleges, make conclusory statements with regard to her credibility and particularly her allegations of a mental impairment.

The administrative law judge noted that reports from Dr. Moreland, her treating physician, reflected periodic treatment for psychological symptoms prior to her date last insured, but he concluded there was no evidence of significant limitation as a result of those symptoms. In support of this conclusion he pointed out that plaintiff had never been hospitalized or seen for formal mental health treatment. She admitted in her testimony that Dr. Moreland had referred her for such

---

[3]See 20 C.F.R. § 404.1529; SSR 96-7p; Craig v. Chater, 76 F.3d 585, 594-5 (4th Cir. 1996).

[4]Id.

[5]Id.

3

treatment, but she "just didn't go." Though she claimed she could not afford it[6] and did not know

if insurance would pay for it, as the administrative law judge observed, there is no indication she

even inquired whether it might be covered by insurance, and he felt this was inconsistent with her

allegations of significantly limiting mental problems.[7]

Plaintiff also alleges that the administrative law judge did not adequately consider a report

of psychological evaluation conducted by Mareda Reynolds, M.A. at plaintiff's request on

July 14, 2007. Ms. Reynolds stated that the purpose of the exam was to assess plaintiff's "current"

functioning, and there is no indication she attempted to relate her diagnosis of dysthymic disorder

and anxiety disorder NOS back to a time when plaintiff maintained her insured status. Though

plaintiff argues that conditions such as these do not increase in severity "in a short period of time,"

four and one-half years is obviously not a "short period." Clearly, evidence supports the

administrative law judge's determination that the evaluation and assessment by Ms. Reynolds are

not applicable to plaintiff's current claim.

Plaintiff's second assignment of error is that the administrative law judge failed to consider

the combination of her impairments, specifically limitations in mobility caused by knee pain, the

need for rest periods during the day, inability to sleep through the night due to severe restless leg

syndrome and functional limitations associated with diabetes and obesity. She also argues that the

---

[6]One of the reasons plaintiff cited for not returning to work after she was laid-off from her receptionist job in 2007 was that her husband got a "good job," which would appear to be inconsistent with the assertion she could not afford treatment.

[7]It is interesting that in the intervening four and one-half years since her insured status expired, plaintiff did not seek any therapy or psychiatric treatment.

administrative law judge failed to give adequate weight to her treating physician's opinion and that he propounded a deficient hypothetical question to the vocational expert.

Here, there are no opinions from her treating physician as to what limitations plaintiff experiences, just reports of her office visits with him which contain his findings (sometimes illegible), diagnoses, and medications prescribed. The administrative law judge reviewed this evidence and determined that it clearly did not establish disability during the relevant period. The evidence relative to plaintiff's knee pain was discussed in detail by the administrative law judge who noted mild degenerative changes in the left knee were documented by x-ray on February 17, 2000. Exam revealed some tenderness in the medial left knee. Medication was prescribed, and there is no further mention of knee pain until plaintiff fell on March 31, 2001 and suffered contusions on both knees. An x-ray from April 10, 2001 was interpreted as showing some progression of the degenerative changes in the left knee, but on April 30, 2001 Dr. Moreland noted this knee was better, and the right knee was hurting only "some." Subsequent treatment notes reflect plaintiff was able to engage in activities such as pulling weeds at her home in August 2001 and working out at a fitness facility in September 2002 without knee problems. On October 3, 2002 she told Dr. Moreland she had some joint pain in her right elbow and knee but admitted it was decreased with rest and Tylenol. The evidence demonstrates that plaintiff's knee problems were not chronic and did not significantly limit her, as the administrative law judge determined.

While plaintiff was considered obese (5'3" tall, 200-205 pounds) and had non-insulin dependent diabetes, the administrative law judge discussed both conditions and factored them into his residual functional capacity findings. He did not note specific limitations due to either condition; however, none are apparent from the record during the relevant time.

5

With regard to a need to take rest periods during the day, which plaintiff indicated resulted from an inability to get adequate sleep at night, the administrative law judge noted that a sleep study done November 3, 2000 revealed difficulty sleeping due to restless leg syndrome which was felt to likely account for her reports of daytime sleepiness. While the examining physician indicated he could prescribe medication which would be helpful, plaintiff testified he never did. The evidence, however, also shows she did not see him again. Further, she testified that, despite being sleepy during the day in 2002, she did not take naps. The administrative law judge concluded that neither leg pain nor daytime drowsiness constituted severe impairments, and his finding is well-supported by the evidence.

It is apparent from the decision that the administrative law judge considered plaintiff's severe and non-severe impairments in combination when evaluating her functional limitations and their effect on her ability to work. While plaintiff claims the hypothetical question to the vocational expert was deficient because all of these impairments were not included, there is no merit to this argument. The hypothetical question was very thorough and contained the limitations which the administrative law judge ultimately found to result from plaintiff's severe impairments. The hypothetical question does not need to contain impairments which the administrative law judge finds non-severe. Farnsworth v. Astrue, 604 F.Supp.2d 828, 858 (N.D. W.Va. 2009), citing, Russell v. Barnhart, 58 Fed. Appx. 25, 29-30 (4th Cir. 2003) (unpublished). Finding that the hypothetical question here "fairly set out all of claimant's impairments,"[8] the Court concludes plaintiff's arguments in this regard are not persuasive, and the Commissioner's findings relative to her residual functional capacity and ability to perform past work are supported by substantial evidence.

---

[8]Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provision of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. § 636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and mail a copy of the same to all counsel of record.

DATE:  August 28, 2009

MAURICE G. TAYLOR, JR.
UNITED  STATES  MAGISTRATE  JUDGE

7